**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**

v.

**JUAN JACOBS, JR., Defendant**

Criminal No. 1984/66

District Court of the Virgin Islands

Div. of St. Croix

May 15, 1986

ANDREW J. REICH, ESQ., Assistant U.S. Attorney, St. Croix, V.I., *for plaintiff*

MICHAEL A. JOSEPH, ESQ., St. Croix, V.I., *for defendant*

O'BRIEN, *Judge*

## MEMORANDUM OPINION AND ORDER

This case presents a novel question under recently-enacted Fed. R. Ev. 412: does the confrontation clause extend to a rape defendant the right to impeach the prosecuting witness with instances of past sexual conduct despite Rule 412's general ban on such evidence? We hold that the accused has a right to cross-examination where the Government first opens the door on this otherwise inadmissible subject matter. We hold further that the failure of the defense lawyer to conduct cross-examination in this case does not constitute ineffective assistance of counsel.

## I. FACTS

On January 9, 1985, a jury convicted Juan Jacobs of 37 counts of first degree rape, two counts of sodomy, and single counts of unlawful possession and use of a firearm. The victim of all these acts was his live-in girlfriend's 12-year-old daughter. They occurred over a two-year period in the house that Jacobs shared with the victim's family.[1] He is now serving a 20-year sentence for these crimes. In addition, his parole from a previous murder conviction was revoked.

Following an unsuccessful appeal of this conviction,[2] Jacobs filed this motion to vacate his sentence pursuant to 18 U.S.C. § 2255 on the grounds of ineffective assistance of counsel. He claims that his lawyer failed to investigate information supplied by Jacobs and his sister that would have yielded evidence to impeach key witnesses. That information consisted of allegations that the victim had engaged in incestuous relations with a brother three years her senior.

The Government brought this to our attention in a motion in limine.[3] We found the evidence inadmissible under Fed. R. Ev. 412 and Jacobs does not dispute this ruling. Instead he contends it became admissible, notwithstanding Rule 412's prohibitions, to impeach the victim's testimony that she was a virgin prior to the

---

[1] The weapons charges were based on an incident wherein Jacobs loaded a single round into a revolver, spun the chamber and fired it in the direction of the victim. The chamber was empty.

[2] The conviction was affirmed by judgment order. Government of the Virgin Islands v. Jacobs, No. 85/3031 (3d Cir. Dec. 11, 1985).

[3] The Government and the defense lawyer agree that the lawyer responded to the motion in limine. The Court Clerk's docket reveals, however, that the response was never filed with the District Court.

rapes and her psychologist's opinion that the victim did not fabricate her testimony.[4] Both statements were elicited during the Government's case-in-chief.

Specifically, the prosecutor asked the victim:

> . . . did you ever have any sexual relations with anyone other than Mr. Jacobs?

She answered "No".

The psychologist was asked on direct examination:

> . . . is it your opinion that children generally make up stories like this against their relatives?

The psychologist responded negatively.

Initially, we summarily denied the § 2255 motion. Upon Jacobs' motion for reconsideration, filed simultaneously with a notice of appeal, we agreed to hear this claim and an evidentiary hearing was held on March 26, 1986. Jacobs offered the testimony of two nieces, his sister and himself. One niece testified that she had observed, unnoticed, the victim and her brother engaged in intercourse. The other niece testified that she also had surreptitiously observed the two naked in a bedroom. Both said they described these scenes to their aunt—Jacobs' sister.

The sister, in turn, testified that she had seen the victim emerging from a bedroom where the brother lay with his zipper open. She testified further that she described these observations to Jacobs' lawyer. Finally, she said that the victim's mother had told her of her son and daughter's relations. Jacobs testified that he had seen the brother pulling up his zipper as he emerged from the victim's bedroom.

In rebuttal, the Government introduced the testimony of the victim's mother and the defense attorney. The mother denied any knowledge of the purported brother-sister relationship or that she had told Jacobs' sister that one existed. She candidly recalled having punished them for "fooling around" approximately five years prior to the first rape. Finally, the attorney testified that the only information he received of the incestuous relationship was Jacobs' observation but that neither Jacobs nor his sister identified

---

[4] Jacobs also contends that this evidence was admissible to impeach the opinion of the victim's examining physician that the victim was not a virgin at the time of trial. This claim is meritless because Jacobs' proposed evidence is totally consistent with this testimony. Consequently, no scenario for impeachment exists.

a witness who could testify to this allegation. He testified further that the mother appeared surprised when Jacobs and his sister confronted her with the allegations.

Jacobs now contends that the testimony produced at the hearing proves that his lawyer's performance was constitutionally deficient because he could have gathered crucial evidence that would have resulted in his acquittal. The Government maintains that evidence of the victim's prior sexual conduct is inadmissible per se in a rape trial.

## II. DISCUSSION

■ As an initial matter, the Government contests our jurisdiction on the grounds that the notice of appeal which Jacobs filed simultaneously with his motion to reconsider irretrievably transferred jurisdiction to the Court of Appeals. We disagree and retain jurisdiction pursuant to Fed. App. P. 4(a)(4). See United States v. Rogers Transportation, Inc., 751 F.2d 635, 636-37 (3d Cir. 1985) [citing Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 60-61 (1982)].

### A. *Rule 412*

■ Rule 412 imposes a per se ban on the introduction of reputation and opinion evidence. Evidence of specific acts of past sexual conduct is admissible in only three instances: 1) when evidence is "constitutionally required to be admitted"; 2) when the accused offers evidence of sexual behavior between the victim and a third person to show whether the accused "was or was not, with respect to the alleged victim, the source of semen or injury"; or 3) when the accused introduces evidence of the alleged victim's past sexual behavior with the accused relevant to the issue of consent. In each instance, the probative value of the specific act evidence must also be found to outweigh the danger of unfair prejudice.

■■ The former practice in some courts had been to admit evidence of promiscuity and specific sex acts to attack the rape victim's character for truthfulness and to show her consent. The ban on reputation and character evidence parallels Rule 404(a)'s maxim that evidence of a person's character is not admissible to show that he acted in conformity with it. And admission of past sexual acts is restricted for the same reason that Rule 609(a) bars the introduction of an accused's earlier rape conviction in a subsequent rape trial—the risk that the jury will find that the

defendant acted the same way again. Rule 412 reflects the now virtually universal view that chastity is absolutely irrelevant to the veracity of a witness and sexual activity has no bearing on the issue of consent.

Several policies are also served by this rule. It protects rape victims from humiliating cross-examinations into the intimate details of their lives. This, in turn, encourages the reporting and prosecution of rapes. Moreover, it eliminates irrelevant and inflammatory issues from the trial. See generally House Comments, 124 Cong. Rec. H 11944-45 (Oct. 10, 1978). See also Bell v. Harrison, 670 F.2d 656, 658 (6th Cir. 1982); Logan v. Marshall, 680 F.2d 1121, 1123 (6th Cir. 1982); Government of the Virgin Islands v. Sciuto, 623 F.2d 869, 875-76 (3d Cir. 1980).

It is clear that Rule 412 limits what evidence an accused may introduce. Jacobs contends, however, that the confrontation clause gave him the right to use Rule 412 evidence to impeach the victim, and presumably her psychologist, once the Government illicitly introduced the victim's direct testimony that she had been a virgin prior to the first rape. In other words, Jacobs argues that admission of the incest evidence was "constitutionally required". Fed. R. Ev. 412(b)(1). His lawyer's failure to, in the least, attempt impeachment is the basis of the ineffective assistance of counsel claim.

 Jacobs' assertion that the ban on sexual conduct evidence embraces evidence of the lack of it—virginity—is correct because it is likely to provoke equally unfair prejudice. E.g., State v. Gavigan, 330 N.W.2d 571, 576 (Wisc. 1983). We also agree that the Rule 412 proscriptions apply equally to the Government because the language of the rule neither restricts its force to the defendant nor provides the accused with the right to rebut Rule 412 evidence introduced by the prosecution. A de jure conflict with the accused's right to confrontation would be evident if the restrictions applied solely to the defendant. No such infirmity arises when both sides are precluded from introducing such prejudicial evidence. Gavigan, supra at 576; Johnson v. State, 246 S.E.2d 363, 365-66 (Ga. Ct. App. 1978). But see People v. Johnson, 671 P.2d 1017, 1020 (Colo. Ct. App. 1982). We conclude, therefore, that the admission of the victim's remarks concerning her virginity was erroneous. We must now decide whether Jacobs had a constitutional right to refute this

testimony.[5] In accordance with the issue framed by Jacobs, this inquiry is limited to whether the use of Rule 412 subject matter during cross-examination is constitutionally required. The question of whether extrinsic Rule 412 evidence may be introduced is not before us.

B. *The Right to Confrontation*

 The Sixth Amendment provides the criminal defendant with the right "to be confronted with the witnesses against him." The right of cross-examination is, perhaps, the most critical component of the confrontation clause. Douglas v. California, 380 U.S. 415, 418 (1965). Its purpose is "to bring out facts that discredit the witness by showing that his testimony-in-chief was untrue or biased." Alford v. United States, 282 U.S. 687, 691 (1931); Davis v. Alaska, 415 U.S. 308, 316 (1973). In short, it "helps assure the 'accuracy of the truth determining process'," Chambers v. Mississippi, 410 U.S. 284, 295 (1973) (citations omitted), and is, therefore, part of the accused's due process right to a fair trial. Id. at 302.

This right, however, is not absolute. Chambers, supra at 295. For example, a defendant has no right to pursue cross-examination that is repetitive or irrelevant. E.g., Davis, supra at 316. Nor may the accused ask questions that serve merely to harass, annoy or humiliate the witness. Alford, supra at 694. Notwithstanding these limitations, "denial or significant diminution [of the right of confrontation] calls into question the ultimate 'integrity of the fact-finding process' and requires that the competing interest be closely examined." Chambers, supra at 295 (citations omitted). Rule 412 requires such an examination because it "creat[es] a presumption that the sexual history of a rape victim will never be admissible, except when compelled by due process because of overwhelming probative value." Tanford & Bocchino, Rape Victim Shield Laws and the Sixth Amendment, 128 U. Penn. L. Rev. 544, 545 (1980).

At the onset, we note that the question of whether a rape defendant's right of confrontation entitles him to impeach a victim's testimony of her virginity is a matter of first impression in the federal courts. Davis v. Alaska, supra, decided an analogous conflict

---

[5] Generally, the failure to object to inadmissible evidence prevents review unless the admission resulted in a manifest miscarriage of justice. E.g., United States v. Nobel, 696 F.2d 231, 237 (3d Cir. 1982), cert. denied, 462 U.S. 1118 (1983). This standard is inapplicable here because counsel's nonfeasance is the heart of Jacobs' claim of ineffective assistance of counsel.

in favor of the accused. There, a burglary defendant attempted to use the sealed juvenile record of the government's key witness for impeachment on the grounds that the witness' probation status tended to show bias and prejudice. The state courts found that the government's interest in protecting the anonymity of juvenile offenders was paramount to the accused's right of confrontation and disallowed the proposed line of questioning.

The Supreme Court reversed the conviction, holding that the "State's policy interest . . . cannot require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness." Davis, supra at 320. What made cross-examination critical was that the juvenile's testimony was the cornerstone of the government's case and, therefore, the conviction rested almost exclusively on the testimony of a witness who had a motive to lie. The Court found:

> In this setting we conclude that the right of confrontation is paramount to the State's policy of protecting a juvenile record—if the prosecution insisted on using him to make its case—is outweighed by petitioner's right to probe into the influence of possible bias in the testimony of a crucial identification witness.

Id. at 319.

 The concern of the Davis Court exists in every rape case where the alleged victim is the prosecution's key witness. Her credibility is crucial to the issue of whether the rape occurred. Giles v. Maryland, 386 U.S. 66, 70 (1967). When the accused makes a showing of proof that the victim has perjured herself or which otherwise significantly undermines her credibility, the protective policies of Rule 412 must give way to the accused's right to confrontation. A contrary view would provide a witness with an impermeable shield against contradiction of perjured testimony. Accord Walder v. United States, 347 U.S. 62, 65 (1954). We hold, therefore, that under these circumstances the accused may cross-examine the complaining witness on prior specific sexual acts provided that the probative value of the proffered proof is found to outweigh the resulting prejudice. Davis, supra at 319.

In so holding, we are aware of two other court-made exceptions to Rule 412. In United States v. Nez, 661 F.2d 1203 (10th Cir. 1981), the court found that the accused may introduce specific acts to show the motive or bias of the victim. Id. at 1206. And the Fourth Circuit

permits a defendant to show his state of mind at the time of the alleged rape through testimony of his knowledge of the alleged victim's reputation and about conversations between them. Doe v. United States, 666 F.2d 43, 48 (4th Cir. 1981). Other circumstances enhancing the probity of past conduct are the need for explanative evidence of a physical fact before the court (e.g. pregnancy) or evidence of sexual history where the victim has engaged in a prior pattern of behavior clearly similar to the conduct immediately at issue. United States v. Kasto, 584 F.2d 268, 271 n.2 (8th Cir. 1978), cert. denied, 440 U.S. 930 (1979). Accord Moore v. Duckworth, 687 F.2d 1063, 1065–67 (7th Cir. 1982).

In the closest case on point, however, the Eighth Circuit upheld a rape conviction where the defendant was denied cross-examination intended to show that the victim, contrary to her testimony, had never married. Without discussion, the court upheld this exclusion because the questions might bring the illegitimacy of the witness' child to the jury's attention. United States v. One Feather, 702 F.2d 736, 739 (8th Cir. 1983).

State law is also instructive. Nearly all jurisdictions have enacted rape shield laws and at least 12 statutes allow the defendant to introduce prior act evidence where the prosecution opens the door in its case-in-chief.[6] In the absence of specific legislation, courts that have considered the impeachment issue generally recognize a defendant's right to confront his accusers.

In New Hampshire, an accused rapist was held to have a right to impeach the credibility of a victim who had given conflicting pre-trial statements regarding her virginity. State v. LaClair, 433 A.2d 1326 (N.H. 1981). The court reasoned that prejudice to the witness was outweighed by the probity of the impeachment evidence. Id. at 1329. A similar result was reached in State v. Howard, 426 A.2d 457, 461 (N.H. 1981), where evidence of the 12-year-old complainant's persistent deviant sexual conduct was admitted under the Davis balancing test.

Arizona, where the rape victim's shield was created by case law, recognizes an exception when the prosecution offers evidence of the alleged victim's sexual conduct. State ex rel. Pope v. Superior Court, 545 P.2d 946, 953 (Ariz. 1976). Massachusetts also permits the rape defendant to counter the prosecution's evidence that the

---

[6] See generally, Tanford & Bocchino, supra. For citations to the state laws, see id. at 584 n.193.

victim was a virgin. Commonwealth v. McKay, 294 N.E.2d 213, 218 n.4 (Mass. 1973).

The opposite result was reached in Johnson v. State, 246 S.E.2d 363 (Ga. Ct. App. 1978), a case virtually on point with ours. The Johnson complainant testified without objection that she was a virgin at the time of the rape. Prior to this testimony, the trial judge denied the defendant's request to introduce the testimony of two witnesses that they had had sex with the victim prior to the rape. The appellate court sidestepped the constitutional question, reasoning that the shield law applied equally to the government and defendant and, therefore, the issue of impeachment could only arise if the defendant failed to object to the admission of evidence of chastity. The court concluded that this failure prevented the accused from raising the issue on appeal. Id. at 365-66.

The vitality of the Johnson rule was questioned by the Georgia Supreme Court when it reversed a rape conviction on the grounds that the defendant had been denied the opportunity to impeach the victim in contravention of Davis v. Alaska. Villafranco v. State, 313 S.E.2d 467, 474 (Ga. 1984). But see People v. Williams, 330 N.W.2d 823, 831 (Mich. 1982) (evidence of reputation or arrest for prostitution not admissible to impeach the victim).

Commentators on the conflict between Rule 412 and the confrontation clause also conclude that Davis v. Alaska forbids the preclusion of sexual conduct evidence for impeachment purposes. Tanford & Bocchino, supra at 581-82; Berger, Man's Trial, Woman's Tribulation; Rape Cases in the Courtroom, 77 Colum. L. Rev. 1, 67-68 (1977).

Finally, an alternative argument advanced for admitting impeachment evidence is that once the prosecution opens the door on otherwise inadmissible evidence, "equity short of due process" requires that the defendant be given the chance to refute it. Berger, supra at 65-66.

We conclude that Rule 412's constitutional exception embraces the accused's right to confront his victim with impeachment evidence consisting of prior sexual conduct where the Government first opens the door on this line of cross-examination. The remaining issue is whether the failure of Jacobs' lawyer to exercise this right constitutes ineffective assistance of counsel thus requiring vacation of the sentence.

277

## C. *Ineffective Assistance of Counsel*

██ ██ The Sixth Amendment also gives the accused the right to effective assistance of counsel. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). This right is violated by the failure of the defense counsel to render "adequate legal assistance." Cuyler v. Sullivan, 446 U.S. 335, 344 (1980).

██ ██ Whether counsel was "ineffective" requires a two-step inquiry. First, the defendant must show that the quality of representation fell below the prevailing professional norms. This showing must overcome the strong presumption that counsel rendered adequate assistance. The accused must also demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." This requires a finding that when the totality of the evidence is considered, "there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." Strickland v. Washington, 104 S.Ct. 2052, 2068-69 (1984).

Jacobs makes two claims regarding the performance of his counsel. He argues that it was inadequate in the first instance because the lawyer failed to develop the impeachment evidence. A similar argument was rejected in Strickland where counsel failed to produce a shred of evidence of the defendant's good character, although it was abundant and readily available, during the sentencing phase of a capital trial. The Court held that inadequacy of performance was not proved where the lawyer reasonably employed a different strategy to mitigate against the death sentence. Strickland, supra at 2070-71.

██ We reject this claim in the context of Jacobs' second argument—that the failure to impeach the witnesses rendered performance inadequate. The use of past conduct evidence for impeachment during a rape trial presented a question of first impression under Rule 412. As a matter of law, we cannot find that the defense counsel's failure to articulate a novel theory when the opportunity unexpectedly arose during trial renders his performance constitutionally inadequate. Consequently, even if the evidence had been assembled, the lawyer's failure to attempt to admit it pursuant to Rule 412(b)(1) does not meet the first prong of Strickland.

278

Nor do we find that Jacobs would have been acquitted if cross-examination had been conducted. In making this determination, we have considered not only the totality of evidence introduced at trial as Strickland requires us to do, supra at 2069, but we have also assumed that the allegations of incest are true and would have been admitted by the victim. Even with this scenario, there is no reasonable probability that the credibility of the victim would have been impaired to a degree that might have raised a reasonable doubt as to Jacobs' guilt. We observed the victim's demeanor throughout her testimony and found her to be believable and sincere. Her testimony was consistent and uncontradicted despite the passage of time and her young age when the rapes began. An admission of incest, even following a contention of virginity, would not have rendered her testimony against Jacobs unbelievable.

We reach the same conclusion regarding the testimony of the psychologist, who opined that the victim did not contrive the allegations. A finding of ineffective assistance of counsel here would require us to make the quantum leap that an incestuous relationship would cause the victim to fabricate the detailed accounts of her testimony. This we will not do. We hold, therefore, that the outcome of the trial was not altered by the failure of counsel to cross-examine these witnesses.

## III. CONCLUSION

We hold that although the defendant was entitled to impeach the complaining witness with competent evidence of her past sexual conduct, the failure of his lawyer to exercise this right does not constitute ineffective assistance of counsel.

## ORDER

THIS MATTER is before the Court on the motion of the petitioner to vacate his sentence pursuant to 18 U.S.C. § 2255. The Court having filed its Memorandum Opinion of even date herewith, and the premises considered, now therefore it is

ORDERED:

THAT the motion to vacate the petitioner's sentence be, and the same is hereby DENIED.