PER CURIAM.
¶1 Juan Walker has been charged in the Sauk County Circuit Court with the sexual assault of Katherine.[1] In a pretrial ruling, the circuit court ordered that DNA evidence from the bed sheet on which the sexual assault allegedly occurred is not admissible in evidence at trial. Walker filed a petition for leave to appeal that order, and the petition was granted by this court.[2] Based on the current state of the record, we conclude that the bed sheet DNA evidence is admissible and reverse the order of the circuit court. Nothing in this opinion is intended to preclude the circuit court from revisiting the topic if additional information or a new argument supports a different result.
BACKGROUND
¶2 The following facts are not in dispute for purposes of this appeal.
¶3 After consuming alcohol, Katherine vomited outside a restaurant in Lake Delton. While Katherine was helped by two friends, Walker (who was previously unknown to Katherine and her two friends) stopped and inquired whether further help was needed. Walker gave Katherine and her two friends a ride in his car to Katherine's residence.
¶4 After Walker, Katherine, and her friends arrived at Katherine's residence, one of Katherine's friends helped Katherine into bed. At that point, Katherine was fully clothed. Walker and Katherine's two friends then left Katherine's residence.
¶5 Katherine does not recall leaving the restaurant or how she got back to her residence. The next event Katherine remembers is waking up naked in her bed at approximately 3:00 a.m., with a male on top of her, and she could feel his penis touching her vagina. Katherine told the man to stop, she pushed him away, and the man got off her.
¶6 Approximately one week later, law enforcement showed Katherine an array of photos which contained Walker's picture. Katherine identified Walker as the man who sexually assaulted her. The State charged Walker with second-degree sexual assault, more specifically, alleging that Walker had sexual contact with Katherine while Katherine was under the influence of an intoxicant to a degree which rendered her incapable of giving consent. Walker was also charged with burglary of Katherine's residence.
¶7 As part of its investigation, the State had the bottom sheet that was on Katherine's bed at the time of the alleged sexual assault tested for DNA evidence. A State Crime Laboratory analyst found both non-sperm DNA and sperm DNA on the bottom sheet. This included a mixture of non-sperm DNA from at least three individuals on the sheet. Walker is excluded as a possible source of the non-sperm DNA on the sheet. The major male contributor detected in the mixture of non-sperm DNA on the sheet was also detected in the sperm DNA found on the sheet. Walker is excluded as a possible source of that sperm DNA. Crime Laboratory analysis could not identify any specific individual as a contributor to any of the bed sheet DNA evidence, nor determine when any of the DNA evidence had been deposited.
¶8 Reports from law enforcement refer to two statements made by Katherine. First, a representative of the State Crime Laboratory asked a police detective to "find out if [Katherine] had any partners that she may have had consensual intercourse with on the bed sheet that was submitted." The detective replied to the representative that Katherine "advised that there were no others." Second, Katherine participated in a SANE (sexual abuse nurse examiner) examination shortly after the alleged sexual assault. During that examination, Katherine indicated that she did not "really remember" details about the assault and that she did not "remember a lot of what happened." Katherine also indicated during the SANE examination that she did not have "consensual intercourse within the previous five days" before the alleged assault.
¶9 In a pretrial motion, Walker asked the circuit court to rule that both the non-sperm and sperm DNA evidence on the bed sheet is admissible at trial. In response, the State argued that all bed sheet DNA evidence is not admissible because of the provisions of WIS. STAT. § 972.11(2), known as the "rape shield law." See, e.g. , State v. Pulizzano , 155 Wis. 2d 633, 638, 456 N.W.2d 325 (1990). At a non-evidentiary hearing, the circuit court ruled that both the non-sperm and sperm DNA evidence are inadmissible. The circuit court gave two bases for its ruling that are pertinent to this appeal. First, evidence of sperm DNA on the bed sheet is evidence of "prior sexual conduct" of Katherine or someone else. From that, the court concluded that the sperm DNA evidence on the bed sheet is inadmissible under the rape shield law.[3] Second, the circuit court concluded that all DNA evidence on the bed sheet is inadmissible because the absence of Walker's DNA on the bed sheet "does not necessarily equate to the absence of Mr. Walker at the scene. Simply because there is no DNA there on that particular bedsheet does not necessarily mean that Mr. Walker was not there. The presence of another's DNA doesn't equate to the absence of another's DNA either."[4]
¶10 Walker appeals that order of the circuit court.
DISCUSSION
¶11 Walker contends that the circuit court erred by applying the rape shield law to these facts, and the circuit court erroneously exercised its discretion in excluding all of the bed sheet DNA evidence. Based on the record as it now stands, we agree with Walker and reverse the order of the circuit court.
¶12 We review de novo the question of whether proffered evidence is evidence of "prior sexual conduct" under the rape shield law. See State v. Vonesh , 135 Wis. 2d 477, 480, 401 N.W.2d 170 (Ct. App. 1986). We review a circuit court's evidentiary ruling under an erroneous exercise of discretion standard. Martindale v. Ripp , 2001 WI 113, ¶28, 246 Wis. 2d 67, 629 N.W.2d 698. We uphold an evidentiary ruling to admit or exclude evidence if the circuit court examined relevant facts, applied a proper legal standard, and, using a demonstrated rational process, reached a reasonable conclusion. Id.
¶13 The first basis for the circuit court's ruling that the sperm DNA evidence on the bed sheet is inadmissible is the court's conclusion that the DNA evidence is evidence of "sexual conduct" by Katherine or someone else.[5] Therefore, according to the circuit court, sperm DNA evidence on the bed sheet must be excluded pursuant to the rape shield law because it is evidence of sexual conduct.
¶14 Walker argues that the circuit court's ruling is based on a false premise because he intends to introduce the bed sheet DNA evidence not as evidence of Katherine's sexual conduct before the assault, but as evidence that someone other than Walker sexually assaulted Katherine, the crime for which he has been charged. Walker asserts that, in light of his proposed use of the bed sheet DNA evidence, the rape shield law does not apply so as to exclude that evidence. For context, we note that Walker's theory of defense is that he never went back to Katherine's residence after initially helping her, and that Katherine has misidentified Walker as her assailant.
¶15 Walker relies on State v. Gulrud , 140 Wis. 2d 721, 412 N.W.2d 139 (Ct. App. 1987) to support his contention that the provisions of the rape shield law do not reach evidence that is "incident to the alleged rape." Id. at 730 (quoting People v. Stull , 127 Mich. App. 14, 17, 338 N.W.2d 403 (1983) ). The State does not dispute that Walker has correctly stated that holding of Gulrud . For that reason, and because the evidence is proposed to be used only regarding the identity of Katherine's assailant, the rape shield law does not factor into our discussion.
¶16 The State challenges Walker's argument by contending that all of the bed sheet DNA evidence is inadmissible because Walker cannot "adequately link" any of the DNA on the bed sheet to the charged crime. We reject the State's argument because it goes to the weight, rather than the admissibility, of the evidence.
¶17 In general, "[a]ll relevant evidence is admissible." WIS. STAT . § 904.02. "Relevant evidence" means evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." WIS. STAT. § 904.01 (emphasis added).
¶18 To repeat, Walker's theory of defense is that he never went back to Katherine's residence, and she has misidentified her assailant. The State concedes, as it must, that identification of Katherine's attacker is of consequence to this case.
¶19 The question then becomes whether the bed sheet DNA evidence has "any tendency" to make it more or less probable that Walker sexually assaulted Katherine. "To be relevant, evidence does not have to determine a fact at issue conclusively; the evidence needs only to make the fact more probable than it would be without the evidence." State v. Hartman , 145 Wis. 2d 1, 14, 426 N.W.2d 320 (1988). With that relatively low bar in mind, we conclude that, based on the current record, all of the bed sheet DNA evidence is admissible. There is evidence that a male other than Walker engaged in sexual activity on the sheet, which was allegedly on the bed when Katherine says that she was assaulted. In addition, Katherine has stated that she has not engaged in consensual intercourse on that sheet. As a result, all of the bed sheet DNA evidence has a tendency to make it less probable that Walker was the perpetrator and has a tendency to make it more probable that another male sexually assaulted Katherine. There is no way to predict at this point how a trier of fact might decide to weigh the significance of any of the bed sheet DNA evidence. The question at this point concerns only admissibility of the evidence and, more specifically, whether Walker can show that this evidence is relevant to his defense. At this point, it clearly is. For those reasons, and based on the current record, we conclude that the bed sheet DNA evidence is admissible.[6]
¶20 The second reason the circuit court excluded the evidence is because, according to the circuit court, the absence of Walker's DNA on the bed sheet "does not necessarily equate to the absence of Mr. Walker at the scene." The State describes this ruling as the circuit court's determination that the bed sheet DNA evidence "lacks sufficient probative value" to be admissible. However, the State never develops any argument to support this basis for the circuit court's ruling.
¶21 Moreover, even if the State had tried to develop an argument to support this basis for the circuit court's ruling, we would reject it. It may be true that, as the circuit court noted, in itself a lack of Walker's DNA on the bed sheet does not necessarily rule him out as the perpetrator. But, the lack of Walker's DNA on the bed sheet, and the presence of DNA from at least one other male on the bed sheet, do not lead to the conclusion that the bed sheet DNA evidence is inadmissible. We discern no basis for excluding this evidence based on that reasoning, and the State asserts no basis for this ruling that is supported by the rules of evidence. Therefore, we conclude that the circuit court erroneously exercised its discretion in excluding the bed sheet DNA evidence for this reason.
¶22 The State also argues that the bed sheet DNA evidence is not admissible because it is "other acts" evidence, and Walker cannot satisfy the requirements for the admission of such evidence as set forth in State v. Sullivan , 216 Wis. 2d 768, 576 N.W.2d 30 (1998). In response, Walker asserts that the bed sheet DNA evidence would not be offered to prove some other act. Rather, as we have explained, Walker seeks to introduce the evidence "about the charged assault itself." Evidence is not "other acts" evidence if it is "inextricably intertwined with the crime." State v. Dukes , 2007 WI App 175, ¶28, 303 Wis. 2d 208, 736 N.W.2d 515. For the reasons stated earlier, we agree with Walker that the bed sheet DNA evidence is proffered as being directly probative on the issue of who allegedly sexually assaulted Katherine and, therefore, is not "other acts" evidence.
¶23 In sum, we conclude that all of the bed sheet DNA evidence is admissible. We stress again that we limit the scope of this opinion to determining whether the bed sheet DNA evidence is admissible based on the current record. We intend to express no opinion on the admissibility of the bed sheet DNA evidence based on the state of the record, and arguments of the parties, at any future point in this case. In addition, we do not intend to limit the circuit court's discretion to give (or not give) a limiting instruction to the jury to the effect that the bed sheet DNA evidence shall be considered by the jury only as potential proof regarding the identity of Katherine's assailant, and that such evidence shall not be considered by the jury as evidence of her sexual conduct before the alleged assault.[7]
CONCLUSION
¶24 For the foregoing reasons, the order of the circuit court is reversed and the matter is remanded for further proceedings consistent with this opinion.
By the Court. -Order reversed and cause remanded.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

We follow the lead of the State in adopting this gender-specific pseudonym. See Wis. Stat. § 809.86(4) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

See Wis. Stat. § 808.03(2). Proceedings in the circuit court have been stayed pending resolution of this appeal.

Pursuant to the rape shield law, when a defendant is accused of a crime such as second-degree sexual assault, "any evidence concerning the complaining witness's prior sexual conduct" shall not be admitted into evidence at trial unless at least one of three statutory exceptions apply. See Wis. Stat. § 972.11(2)(b). "Sexual conduct" is broadly defined in § 972.11(2)(a) as "any conduct or behavior relating to sexual activities of the complaining witness, including but not limited to prior experience of sexual intercourse or sexual contact, use of contraceptives, living arrangement and life-style." Sec. 972.11(2)(a).

The circuit court rejected Walker's argument that an exception to the rape shield law contained in Wis. Stat. § 972.11(2)(b)2. supported admission of the DNA evidence. Walker does not contend in this court that this exception is a basis to reverse the circuit court's ruling. Therefore, we do not discuss that portion of the circuit court's ruling any further.
The circuit court also stated that "there is a danger to unfairly confusing the jury with regard to that" which we conclude is a reference to that statutory exception. The State contends in its briefing that the circuit court's reference to "confusing the jury" is a stand-alone determination regarding the inadmissibility of the bed sheet DNA evidence that is not tethered to the exception in Wis. Stat. § 972.11(2)(b)2. However, the State never develops this argument but, rather, refers to jury confusion only in the context of the analysis required by State v. Sullivan , 216 Wis. 2d 768, 576 N.W.2d 30 (1998), regarding "other acts" evidence. We reject this undeveloped argument and do not discuss further that portion of the circuit court's ruling.

The circuit court's order states that all bed sheet DNA evidence, both non-sperm and sperm DNA, is inadmissible because the first basis for the court's ruling excluded the sperm DNA evidence, and the second basis for the circuit court's ruling excluded both the non-sperm and sperm DNA evidence. The parties do not differentiate in their arguments between the admissibility of the non-sperm and sperm DNA found on the bed sheet. While we recognize the distinction between the two types of DNA evidence found on the bed sheet, we will analyze together the admissibility of the non-sperm and sperm DNA evidence as the parties do.

As part of its argument against admissibility, the State purports to raise questions about Katherine's statement to law enforcement that she did not have consensual intercourse on the sheet. The State asserts that the statement from Katherine was not made under oath and speculates that Katherine may have misunderstood the question put to her or that Katherine may have given false information to law enforcement on this question. We fail to discern how those points (two of which have no basis in the record at this time) lead to the conclusion that the bed sheet DNA evidence is inadmissible, and the State does not explain its argument. At most, these speculative points serve to highlight that the record at this juncture is sparse.

In light of our resolution of this appeal, we need not reach Walker's contention that exclusion of the bed sheet DNA evidence violates his constitutional right to present a complete defense. See Sweet v. Berge , 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (if a decision on one point disposes of the appeal, an appellate court will not decide other issues raised).