**STATE OF HAWAII**, Plaintiff–Appellee, v. **CARLOS CALBERO**, Defendant–Appellant

NO. 13549

(CR. NO. 88–0685)

DECEMBER 28, 1989

LUM, C.J., NAKAMURA, PADGETT, AND
WAKATSUKI, JJ., AND INTERMEDIATE
COURT OF APPEALS CHIEF JUDGE BURNS,
IN PLACE OF HAYASHI, J., RECUSED

OPINION OF THE COURT BY PADGETT, J.

This is an appeal, after a jury trial, from convictions of sexual assault in the second degree and sexual assault in the fourth degree. Because of errors in evidentiary rulings by the trial court, we reverse and remand for a new trial.

The indictment under which defendant–appellant Carlos Calbero (appellant) was charged read as follows:

The Grand Jury charges:

**COUNT I:** On or about the 29th day of January, 1988, in the City and County of Honolulu, State of Hawaii, CARLOS CALBERO did knowingly subject [complaining witness] to an act of sexual penetration by compulsion by inserting his finger into her vagina, thereby committing the offense of Sexual Assault in the Second Degree in violation of Section 707–731(1)(a) of the Hawaii Revised Statutes.

**COUNT II:** On or about the 29th day of January, 1988, in the City and County of Honolulu, State of Hawaii, CARLOS CALBERO did knowingly subject [complaining witness], who was not his spouse, to sexual contact by compulsion or did cause [complaining witness] to have sexual contact with Carlos Calbero by compulsion, by touching her breast, thereby committing the offense of Sexual Assault in the Fourth Degree in violation of Section 707–733(1)(a) of the Hawaii Revised Statutes.

**COUNT III:** On or about the 29th day of January, 1988, in the City and County of Honolulu, State of Hawaii, CARLOS CALBERO did knowingly subject [complaining witness], who was not his spouse, to sexual contact by compulsion or did cause [complaining witness] to have sexual contact with Carlos Calbero by compulsion, by touching her vaginal area, thereby

committing the offense of Sexual Assault in the Fourth Degree in violation of Section 707–733(1)(a) of the Hawaii Revised Statutes.

"Sexual assault in the second degree" is defined as follows:

**Sexual assault in the second degree.** (1) A person commits the offense of sexual assault in the second degree if:

> (a) The person knowingly subjects another person to an act of sexual penetration by compulsion[.]

"Sexual assault in the fourth degree" is defined as follows:

**Sexual assault in the fourth degree.** (1) A person commits the offense of sexual assault in the fourth degree if:

> (a) The person knowingly subjects another person to sexual contact by compulsion or causes another person to have sexual contact with the actor by compulsion[.]

Appellant admitted kissing and touching the breasts of the complaining witness but denied touching her vagina or penetrating her vagina with his finger.

The jury acquitted appellant of Count II which charged him with his admitted touching of the complaining witness' breasts, but convicted him of Counts I and III, which charged him, respectively, with penetration, and touching, of the complaining witness' vagina.

Obviously, the issues which the jury had to pass on at trial were (1) whether there was compulsion and (2) the credibility of the complaining witness versus the appellant.

From the testimony of the complaining witness and the appellant, it is clear that the complaining witness never, in express words, consented to appellant's advances. On the other hand, it is equally clear that she never, by express words, objected to the advances, nor did she physically attempt to prevent them. There is a conflict in the evidence as to who took off the complaining

witness' turquoise–colored, midcalf–length spandex pants, and as to whether appellant touched the complaining witness' vagina, or inserted his finger into her vagina.

In the course of the complaining witness' direct testimony, the following occurred:

Q Now, [complaining witness], when the defendant reached into your shirt and grabbed your bra strap, is that when he said "Because of this"?

A Yes.

Q What did you think?

A I got scared. I just sat real still.

Q When you say you got scared, what were you thinking?

A I didn't know what to do.

Q What was it that made it so that you didn't really know what to do?

A I never been in that situation before.

Tr. 10/3–4/88 at 78.

At a sidebar conference, the following occurred:

THE COURT: Record will show the witness has been excused and we're out of the presence of the jury. Mr. Cassiday, you had some matters you want to bring up?

MR. CASSIDAY: Yes, Your Honor. On direct examination the witness testified that she didn't know what to do because nothing like this had ever happened before. I don't want to go into any 412 type material with this witness. I don't want to bring up any past sexual conduct. But, on the other hand, I don't want the jury left with the thought that this gal had never been kissed by a guy or whatever. I would like to inquire of her as to whether people have tried to kiss her in the past and whether she's told them not to.

*Id.* at 150–51. After a lengthy discussion and argument, the court ruled as follows:

> THE COURT: All right. I think I understand the position of both of the parties.
>
> I've read Hawaii Rule of Evidence 412 very carefully. That rule appears to completely prevent inquiry into the past sexual activity or past sexual conduct of the victim. It's a rape shield law in its purest sense. It states by its own language that notwithstanding any other law to the contrary — and I must presume any other evidentiary law to the contrary — that such inquiry should be barred.
>
> However, I don't really, I think in this particular case, need to rule whether or not there's any situation or I don't need to rule that there is no possible situation under which inquiry into the past conduct of the victim is applicable. I am going to rule in this particular case that the defendant has not opened any door, assuming a door could be opened under that rule, which would allow inquiry into her past sexual experience. I listened very carefully to see whether there might be a door open, and my notes indicate that she stated, quote, "I have never been in that situation before," closed quote. And I think a fair interpretation of her testimony in this regard that she's never been in this particular situation, involving alleged sexual misconduct by a family friend who's twice her age where the discussion, according to her at least, turned from sunset to taking off her pants, I cannot fairly read into her testimony on direct an allegation which would — excuse me. A statement which would allow the defense to go into her past experience on whether or not she's ever been experienced, kissed by anyone before or fondled by anyone before.

For that reason I'm going to deny the request of the defense to conduct an inquiry into that area. Anything further?

*Id.* at 152–54.

Subsequently, appellant's counsel wanted to have appellant testify as to the statements which the complaining witness made to him during the course of the encounter. The following occurred:

MR. CASSIDAY: Let me put on the record what he would say so we are clear exactly what is going to be excluded and what isn't. He would say that what led up to the fact of him thinking that he had — that they were getting close or intimate was the fact that she was talking about her boyfriends in California. To which he asked her do you fool around on your boyfriend. To which she responded to him I could get any — or my boyfriends do a lot for me, and I can get anything I want from them. I can get any man I want and if I'm in the mood, and I just so happen to be in the mood. And at that they started kissing. And all of that has been excluded, which I am not going to present, but that would be the testimony which I would like to present.

THE COURT: Miss Ahn, do you have anything further to say on the testimony which I am excluding?

MS. AHN: No. I think the State's position is clear.

MR. CASSIDAY: Well, I think that the Court should tell my client since we're on the record exactly what he can't or can say.

THE COURT: I would be happy to do so. I was either going to either let you do it or I'll do it.

But since you requested that I do it, Mr. Calbero, I'm placing limitations on your answers and on the questions which are going to be asked. I have placed the limitation and have barred testimony regarding the complaining witness' prior dealings with her boyfriend. Mr. — your

lawyer, Mr. Cassiday, may ask you as to what happened here, and your answer may begin from that portion where she says, "Well, I can get anything I want out of a man." I'm assuming that this is what your answer is going to be. I don't know. But you can discuss what she talked about in terms of her belief as to her power over men and her mood and the fact that she was in the mood from that time on.

Stay away from discussion as to what she told you what she did with her boyfriend or what you asked her about what she did with her boyfriend. Because in my opinion of the law that we have which bars evidence relating to a victim's or complaining witness' past sexual conduct bars discussion of that.

You understand the point from which you can start talking? She's talking about men generally. You understand that?

THE WITNESS: Right.

HRE 412 reads as follows:

**Rule 412  Rape cases; relevance of victim's past behavior.** (a) Notwithstanding any other provision of law, in a criminal case in which a person is accused of rape or sexual assault under any of the provisions of chapter 707, part V of the Hawaii Penal Code, reputation or opinion evidence of the past sexual behavior of an alleged victim of such rape or sexual assault is not admissible.

(b) Notwithstanding any other provision of law, in a criminal case in which a person is accused of rape or sexual assault under any of the provisions of chapter 707, part V of the Hawaii Penal Code, evidence of a victim's past sexual behavior other than reputation or opinion evidence is:

(1) Admitted in accordance with subsection (c)(1) and (2) and is constitutionally required to be admitted; or

(2) Admitted in accordance with subsection (c) and is evidence of:

   (A) Past sexual behavior with persons other than the accused, offered by the accused upon the issue of whether the accused was or was not, with respect to the alleged victim, the source of semen or injury; or

   (B) Past sexual behavior with the accused and is offered by the accused upon the issue of whether the alleged victim consented to the sexual behavior with respect to which rape or sexual assault is alleged.

(c)(1) If the person accused of committing rape or sexual assault intends to offer under subsection (b) evidence of specific instances of the alleged victim's past sexual behavior, the accused shall make a written motion to offer such evidence not later than fifteen days before the date on which the trial in which such evidence is to be offered is scheduled to begin, except that the court may allow the motion to be made at a later date, including during trial, if the court determines either that the evidence is newly discovered and could not have been obtained earlier through the exercise of due diligence or that the issue to which such evidence relates has newly arisen in the case. Any motion made under this paragraph shall be served on all other parties and on the alleged victim.

(2) The motion described in paragraph (1) shall be accompanied by a written offer of proof. If the court determines that the offer of proof contains evidence described in subsection (b), the court shall order a hearing in chambers to determine if such evidence is admissible. At such hearing the parties may call witnesses, including the alleged victim, and offer relevant evidence. Notwithstanding subsection (b) of rule 104, if the relevancy of the evidence which the accused seeks to offer in the trial depends upon the fulfillment of a condition of fact, the court, at the hearing in chambers or at a subsequent hearing in chambers scheduled for such purpose, shall accept evidence on the issue of whether such condition of fact is fulfilled and shall determine such issue.

(3) If the court determines on the basis of the hearing described in paragraph (2) that the evidence which the accused seeks to offer is relevant and that the probative value of such evidence outweighs the danger of unfair prejudice, such evidence shall be admissible in the trial to the extent an order made by the court specifies evidence which may be offered and areas with respect to which the alleged victim may be examined or cross–examined.

(d) For purposes of this rule, the term "past sexual behavior" means sexual behavior other than the sexual behavior with respect to which rape or sexual assault is alleged.

Despite his assertion to the contrary at oral argument, appellant's counsel did not give the notice required under HRE 412(c)(1) and consequently there was no ruling thereunder, so the issue in this case does not involve the exclusion of evidence properly offered by appellant under HRE 412.

HRE 412 cannot override the constitutional rights of the accused. Under sections 5 and 14 of Article I of our State Constitution, appellant's right of confrontation includes a right to appropriate cross–examination of the complaining witness.

When the complaining witness, on questions by the prosecution on direct, stated with respect to the incident in question "I [had] never been in that situation before," that statement was obviously offered for the purpose of bolstering a necessary element of the offenses charged, to wit: compulsion, and negating the defense of consent. Appellant's counsel wanted to cross–examine the complaining witness as to whether people had tried to kiss her in the past and whether she had told them not to (Tr. 10/3–4/88 at 151) and the court below denied even that. *Id.* at 154.[1]

In *State v. Williams*, 21 Ohio St. 3d 33, 487 N.E.2d 560 (1986), the Supreme Court of Ohio, dealing with the Ohio rape shield law, a statute (RC 2907.02(D)), stated:

> The contested issue in this case is *consent*, which directly relates to an element of the crime of rape. The victim testified on direct examination that she *never* consents to sex with men. The testimony proffered by appellee directly refutes this contention. As in *Davis*, this evidence is submitted for more than mere impeachment of a witness' credibility. The victim's credibility is indeed being impeached; however, the proffered evidence has a more important purpose, which is to negate the implied establishment of an element of the crime charged. For this

---

[1] In the course of oral argument, the deputy prosecuting attorney denied that this was what had happened but the transcript speaks for itself.

reason, the probative value of the testimony outweighs any interest the state has in its exclusion.

. . . .

Accordingly, we find that the rape shield law as applied in this case violates appellee's Sixth Amendment right of confrontation.

*Id.* at 36, 487 N.Ed.2d at 562–63.

In another case, dealing with Federal Rule of Evidence 412, which is, in all important respects, identical with HRE 412, the court in *Government of Virgin Islands v. Jacobs*, 634 F. Supp. 933, 935 (D.V.I. 1986), stated as follows:

This case presents a novel question under the recently–enacted F.R.E. 412: does the confrontation clause extend to a rape defendant the right to impeach the prosecuting witness with instances of past sexual conduct despite Rule 412's general ban on such evidence? We hold that the accused has a right to cross–examination where the Government first opens the door on this otherwise inadmissible subject matter.

Here, the government deliberately inserted into the record the victim's statement "I [had] never been in that situation before." Reasonable cross–examination on that subject should have been allowed under the right of confrontation. It was not, and the court below erred in prohibiting it.

Moreover, there was error when the court below prohibited appellant from testifying as to everything the complaining witness had said to him during the course of their encounter, about her past sexual experience, since her statements were clearly relevant to the issue of consent.

In *Doe v. United States*, 666 F.2d 43, 48 (4th Cir. 1981), the issue was whether the victim had consented to the act charged. On appeal, the Fourth Circuit Court affirmed a trial court order permitting the defendant to introduce, among other things, telephone

conversations that the defendant had with the alleged victim. In construing FRE 412, the court stated:

> Certainly, the victim's conversations with Black [the defendant] are relevant, and they are not the type of evidence that the rule excludes.

The ruling below was not based on relevance (HRE 401) or on prejudicial effect (HRE 403), but on HRE 412. Due process, however, allows the introduction of evidence relevant to the issue being tried.

Whether or not the complaining witness had had past sexual experience was relevant only to the extent the State, by eliciting her answer "I [had] never been in that situation before," had injected her past experience into the trial. But her alleged boasting of her past sexual experiences to appellant (if the jurors believe it occurred), while parked in his car at the beach could be construed by reasonable jurors to be an invitation to sexual advances, and, coupled with her failure to object, by either words, or actions, to those advances, to constitute consent. The issue being tried here was consent, and the complaining witness' statements as to her past sexual experience, in the context made, clearly were relevant to that issue and, consequently, should have been admitted.

Reversed and remanded for a new trial.

*Benjamin B. Cassiday, III*, for appellant.
*Vickie L. Silberstein*, Deputy Prosecuting Attorney, for appellee.